Good morning and may it please the court. Jacqueline Beshara for the United States. The only issue before the court today is whether the good-faith exception should apply. What's at stake is the evidence necessary to prove serious charges involving the defendant's possession of child pornography and efforts to destroy records on his phone. What's at stake is the constitutional protection. The question is whether or not it has been a Fourth Amendment violation. That's what's at stake, the merits of the case. Judge Gregory, we have conceded that this warrant is facially deficient, so all that remains is the question whether the good-faith exception applies, right? The government is in an odd posture. You appear to have conceded everything away about this search warrant in order to say that it's deficient so that you can get to the good-faith exception. That just seems an unusual posture to me. Well, Your Honor, certainly I would prefer that there be no problem with the warrant. I don't like being in this posture, but I think if we look at the the full picture of what we have here, the warrant, the affidavit, and the supporting documents, the best way to understand what happened here is a failure of particularity because the affidavit is clear that they're asking for permission to search the defendant and his phone for evidence of sexual abuse of a child, and that is not properly reflected on the face of the cast. That's a classic, you know, all these cases that talk about particularity problems, they all have these kinds of incorporation issues, and that's really what we have here. The affidavit wasn't attached. It was not properly attached. It wasn't attached, period. You don't have to put anything in front of it. And the government has also conceded that it wasn't incorporated into the affidavit. That's another thing you conceded, correct? Right, we concede that under GRO, the words used on the face of the cast are not legally sufficient words of incorporation to incorporate the affidavit, but what's important is that the commander actually had all of these documents in front of him when he authorized the search. We know that because he signed and dated all of them at the same time. But you have another problem, too, is that in terms of whether or not he authorized the search or not, because you have a finding, a fact, against you, the district court didn't believe that he authorized the search. So I think I'm reading now, page J215, I hope you're reading when you're answering my question from what the transcript says. And as a matter of fact, it says, I find, in Stosman, I find. So you have a factual finding against you. He didn't believe it. And you don't believe his standard of review was incorrect, was it? He said by preponderance of evidence. Is that right? That's how he should view the evidence? In the district court, right? Yeah. This court's standard of review is de novo. No, no, the district court. The district court. Right. It's not de novo in terms of factual questions. Is it factual determination? We go back and we can undermine that? Certainly not, Judge Gregory. We are not contesting any of the court's factual determinations. We're accepting the facts and saying that on these facts, the agent's reliance was reasonable. That's a legal question that the court reviews de novo. But it's based upon, you said, the backstop of all the errors were, is that, but yeah, but he told me that I could search. That's one part of it. That's the biggest part of it that you have left, because everything else was wrong. And the court found that he didn't believe it. Didn't believe it. Did he? Am I wrong? So, respectfully... Am I wrong about that? I'm not convinced by preponderance that he said, the commander, she could search the phone. That was his factual finding. And that's a credibility finding. I don't think that's a finding. Are you reading the transcript? I have it in front of me, yes, your honor. Did I read it incorrectly? No. What, you said that's not what, de novo, we look at that, de novo? The legal question... That's not a legal question, a factual question, credibility. He didn't believe it. He's, this record made it very clear by preponderance that I don't believe he told her he could search the phone. Full stop. Okay, so if I could just clarify, there is a little bit of, we're talking about two different things. What was going on in the district court was that the government initially asserted that there was a verbal and oral cast to search the phone. That's what the district court is talking about there when he says, I find that there was not, by a preponderance, this oral cast. He did that because there was nothing in writing that could support it. No, your honor. It had no limitations, no affidavit was attached. The best you could do is say, with good faith is, he told me that I could search. That's why he got to the bottom line. Everything else was wrong. It was not there. That's why, that's not out of context. That's what you were left with, really. You're saying it's good faith because even though the affidavit wasn't there, it was understated, he said that I could search the phone. The court said, I don't believe that by preponderance of evidence. We do this all, we have these suppression motions. I've never seen this case where we say, officer said I saw it in the glove compartment and the defendant said, no it wasn't, it wasn't. I've never heard this court ever say, well we fine, we're going to overturn that factual question on that motion to suppress and say we believe the defendant that it really wasn't in the glove compartment. No, no, no. Why should we do it now because you lost? Judge Gregory, we are not asking you to reverse the factual finding. We have conceded that there was not a proper oral cast within the scope of the military rules of evidence. Okay? But what we're talking about now is despite the deficiencies in any oral cast or written cast, whether the agent nonetheless reasonably believed that she had the commander's authorization to search the phone. But we have to agree that the warrant was deficient in the first place rather than the warrant said what it said and they exceeded the scope of the warrant. That's a distinction you have to deal with, isn't it? Whether they exceeded the scope of the warrant as opposed to the warrant being deficient. Right. So definitely that's an important distinction. I think that probably they're kind of two sides of the same coin when we're talking about particularity or execution. It's a question of when this kind of variation or discrepancy arises. Right? Particularity cases, the problem arises when there's some kind of mismatch between what is described in the application and then what appears on the face of the warrant. An execution problem arises later. The parameters of the warrant have been set. Everyone agrees upon them. But then something happens when the officers are trying to carry it out that causes them to vary from those parameters. And that's why I would suggest that this is really a case about particularity, not execution. But I appreciate that even if the court disagrees with me, we still... But they did exceed the parameters of the warrant, correct? If you think that this was simply an execution problem, then yes. But the court still has to consider whether the good faith exception applies, even if we're in an execution problem world. So is the question then, was it reasonable for Agent Smith to believe that the affidavit was incorporated? Does that become the question? I think that's part of the analysis, Your Honor. If we're talking about execution, the courts that have looked at this have said, did the officers have an objectively reasonable belief that the warrant authorized whatever they ended up searching for? And so I think one factor the court should consider is that she thought that the affidavit was part of the cast. She testified that in her experience, all three documents were part of the cast. As I mentioned before, the commander actually signed all three documents as well. And he said, I thought that's what I was authorizing. Exactly, right. Well, she was authorizing. Now, the judge found nobody said that's what they actually said, right? She testified that I don't remember what he actually said, so there wasn't that oral. But you have these other, you know, what they tried to do, even if they didn't accomplish it. Right. And then a pretty distinctive- But the credibility was found against you. The district court made no credibility findings, Your Honor. He did make a credibility finding. They testified that she said it was his understanding verbally that it would include the search. He said he didn't believe that. That's what he was talking about. You can't change that. The record is the record. I don't know why the government is pressing this case, I guess, in the sense that you lost, like you normally win most of these cases, but here the district court found against you the credibility. Didn't he say Agent Smith, quote, was very candid? She couldn't remember, and I doubt he could either, so I'm not convinced by the preponderance that he said she could search the phone. Yes. Is that what we're talking about? That's right. Well, how does that help you? I mean, you can't remember? That means it's good? It's strong evidence? Because- Where's the rest of the evidence? Because when we're talking about an oral cast under the military rules, it has to be some kind of express authorization, and the problem is that her testimony and the commander's testimony that it was essentially conditional. Well, it's different than it is in the civilian, is it? It's supposed to be in a warrant. That's what the frame was at. The warrant is important because that sets the framework where we can overcome what otherwise is a constitutional protection, to say we can go to your person and your property and search it. That allows to have that. It's not just a, oh, you know, but the warrant is important. It is important. Right, and it's very important. Here, there's no affidavit, there's no limitations, and then they come and say, and the court said that, again, I'm just reading, I'm not convinced, but apparently he said that she could search the phone because that's what he testified to. Right, she didn't have a proper- He said she could, he told her she could search the phone. Yes. And the court did not believe that by preponderance of evidence. Is that right? Yes. Thank you. And if you admitted that in your brief, that you're accepting there was no oral authorization, and your argument is good faith, right? Exactly. So when there's a Fourth Amendment violation, that doesn't actually solve the question. Right. Right. The Supreme Court's told us exclusion is the exception, exclusion's not the rule. Right. So what's your argument on good faith, why it was objectively reasonable to believe that they had authorization to search the phone? Because throughout this process of applying for, obtaining, and actually executing the CAS, everyone understood that the purpose of this was to search the defendant's phone for evidence of child sexual abuse. We've talked a little bit about what happened before they actually met in writing, or I'm sorry, met in person and signed the written documents. When they met, the commander put her under oath, and she swore to the written CAS, and he signed these documents. And the attachment is quite specific about what they were going to do with the phone, right? Which is not incorporated into the warrant. It's not properly incorporated, Your Honor. But it is something that the court considers in assessing objective and reasonable good faith. Now, the good faith exception doesn't apply if they exceeded the scope of the warrant, does it? We don't agree with that, Your Honor. Based on what? Well, it comes from the Supreme Court's decision in Maryland v. Garrison, which was an execution problem, and there the court did consider whether the officers objectively, reasonably believed that they were executing the warrant properly. That's how other courts of appeals have treated this issue in published opinions, like the Seventh Circuit in Grisanti, the First Circuit in Pimentel. Can a warrant that authorizes a seizure, but not a search, be insufficiently particularized under your analysis? Again, I think it depends on sort of where is this variation occurring? Is it in the request, the application? Is that where the sort of discrepancy arises? Or does the discrepancy arise later, for example, where, you know, they've got the wrong apartment number, and then they're trying to execute the warrant? And we haven't talked yet about what happened after the commander signed the CAS, and I think that's pretty important to the court's analysis. It's unusual that the forensic examiner who had the written CAS in front of him actually stopped the search, because he understood that there was a parameter defined in the written CAS to search for... He understood that they were exceeding the scope of the warrant. He was concerned about that, and so that's why he stopped the forensic examination and came back to Agent Smith and said, I think we need additional search authorization to search for evidence of possession of child pornography. So he was acting as though the affidavit and its attachment were incorporated and were a part of the warrant. Yes, exactly. And in that respect, this case is a lot like this court's previous decision in Kazaa. That case involved the wrong attachment B, listing the items to be seized, that was attached to the actually signed and executed warrant, but this court upheld the application of the good faith exception, notwithstanding that the warrant was facially deficient. And the court's reasoning was essentially this document assembly problem in that case. It didn't affect the magistrate's determined... The case is totally the opposite of this one. That's the case you mean that they attached the affidavits were there, they just stapled it to the wrong one. Isn't that what you're talking about? That's the one I'm talking about, they attached... You don't have anything to staple anything, you didn't have... The warrant is just, there's nothing there. Respectfully, Your Honor... But the district court, respect to the district court, we always talk about the district court saw this case, I mean, the things you conceded, you agree that it's the defective... Right. And you try to, you're smirking, seeming to me, but what you seem to me what you're saying is that all this is cured because someone in the laboratory saw what? Saw an affidavit and said we've gone too far, but they're already searching the phone by that time, weren't they? I see that my time has expired, may I respond? I know you are, but I'm asking you the question, so you're okay. Okay, our position is not that these documents cured the defect in the CAS. That's a separate question, right? That would be in, before you get to good faith, we're not there anymore. Now we're just talking about the good faith exception, and that's where the court looks at all the facts and circumstances of the case. If I may just explain why I believe that the Kazaa case is helpful here, it's because the court said that that problem, attaching the list of items to be seized from the wrong defendant's house, it didn't affect the magistrate's decision to issue the warrant, and it didn't affect the ultimate execution of the warrant. That's exactly the same circumstances here, right? We know that the failure to properly incorporate these supporting documents into the face of the CAS, that didn't affect the commander's decision to issue the CAS, and it didn't affect the forensic examiner's ultimate execution of the CAS. When he signed it, he thought it was maybe just for the seizure, because that's what it said, didn't it? To seize. That's not consistent with his sworn testimony. That's the problem you have. Who believed it? I mean, what part of it was believed that was relevant? I'm just, in the findings. Okay, very well. I have one question. You mentioned a Supreme Court case earlier. What was the name of that one? Maryland v. Garrison. Maryland v. Garrison. Okay. I was looking for it in your brief. Is it in your brief? I believe it's cited by either Pimentel or Gersanti. It is cited in our brief. Okay, thank you. It might be in the reply, perhaps, Judge Thacker. Thank you. Okay, thank you. Thank you, Counsel.  Mr. Rayfield? Thank you, Your Honors. Mike Rayfield on behalf of the defendant, Joshua Ray. Can you either move the microphone closer or speak up, please?  I want to start with the point about the factual findings and then turn to the point about this distinction between execution and particularity. So on the factual findings, I think, Judge Gregory, I agree with you. Because Ray's motion to suppress was granted, this Court reviews the evidence in the light most favorable to him. And the District Court didn't just draw the ultimate conclusion that the good faith exception doesn't apply. It also made factual findings that can't be reconciled with the government's position. A big example, as we've been talking about, is the testimony that Commander Washburn told Agent Smith that she could search Ray's phone. The District Court rejected that testimony in the quote we've talked about a few times. Now the District Court didn't mention, didn't make a factual finding on every single piece of testimony that was offered in the suppression hearing. So do you agree that the District Court didn't cast out the commander's credibility entirely? I don't think expressly, but I think by implication. That the Court said, it's very possible Commander Washburn thought he was talking about searching the phone. But then on the same page, the District Court goes on to say... Right, but that said it didn't actually orally authorize it. Right. That's a finding. We can't disagree with that unless it was clearly erroneous. That's fair. But I don't think there's any indication that the District Court found any of the testimony credible. I mean, to the contrary, he told Agent Smith at one point that her quote obfuscation of the record was quote just unacceptable. And because the government hasn't argued that anything was clear error here, I'm not even sure the Court can accept any of the testimony given below as true. Is the question for us though, whether it's objectively reasonable? It's not really who believed what, right? The legal question is, was it objectively reasonable to believe that Agent Smith had authorization? Well, let me move past the factual findings into the distinction between execution and particularity. So the Supreme Court hasn't applied, so far as I'm aware, the good faith exception to a situation like this one, where an officer exceeds the clear limits of the law. Well, lots of courts have, haven't they? Don't we have other courts of appeals where there's an incorporation problem, where an affidavit authorizes something, but the words in the warrant don't incorporate it? And all the other courts of appeals have asked, can you in good faith believe that was incorporated? And you can. So, I mean, isn't there actually a lot of precedent going that way? I would respectfully disagree with that. I think in all of the cases the government cites, as far as I'm aware, there was a defect in the warrant itself. There was a particularity defect. It wasn't... And is that the same for... So I did find the Maryland v. Garrison case that opposing counsel cited in her reply brief. Do you have a response to that Supreme Court case and its applicability here? Honestly, I don't. It wasn't... I think it was in a... Right. ...quoting site. It's in a quote of a quote sort of thing, but... Yeah, so to be honest, I haven't prepared a response to that, but I'm happy to follow up with a letter on that case, because I just don't know the case well enough. I apologize for that. But as far as I know, the Supreme Court has never held... In all of those cases you were citing, Your Honor, in the out-of-circuit cases, there was a defect in the warrant. So the officer is actually reading the warrant and abiding by its terms, but there's a problem with the warrant itself, a particularity problem. What this... What we have here is an execution problem. The CAS allowed Agent Smith to search Ray's person and seize his phone. No reasonable officer, I would say, could read that and think that it allowed a search of the phone. And in that situation, Leon's good faith exception has no role to play. Leon itself says that its exception applies when an officer acts in, quote, good faith reliance on a search warrant that is subsequently held to be defective. The court went out of its way to clarify that the exception, quote, assumes, of course, that the officer is properly executed in the warrant. And that makes sense, because when officers exceed a valid warrant, unlike where they're, you know, objectively reasonably carrying out a defective warrant, the blame for that constitutional failure lies entirely with the officer, the very actor that the exclusionary rule is designed to deter. And I want to point the court to a case cited in our brief, which I think is almost directly on point. United States v. Angelos. It's a Tenth Circuit case, 433 F. 3rd, 738. In that case, the officer asked for authority to search for a variety of items in a house, but the warrant itself only allowed the officer to seize a subset of the items requested. The officer then went beyond that limit. It was an execution case. The Tenth Circuit held that, quote, the good faith exception will not save an improperly executed warrant. And it continued. Well, here, don't you, I mean, here you have, they asked for permission to search the phone and get very particular things from his calendar and his photos and his, and they were given that authorization and an affidavit, an attachment, a sign, but it just wasn't, the words weren't properly used in the warrant to incorporate it. It referred to the affidavit, but it didn't properly incorporate it. That seems a little different where you have authorization, but the problem is a disagreement about whether the warrant included all three of these documents or not. I respectfully disagree that there was authorization. The affidavit, they certainly requested authority to search, to search the phone. I don't doubt that. But the warrant itself is the document that gives authorization and there's no, there's no possible reading of the CAS that allows for a search of the phone. And to be clear, the written warrant itself is critical because that's what's actually presented to the arrestee. It's the document that, that, as, to use... When you're talking about deterring the right people, right, the, the agent and the person in the magistrate's position here, both of them knew about and were on the same page with all three of these documents. So where's the, where's the deterrence problem that we're trying to solve by excluding the evidence here? The deterrence problem. I mean, I think that the Supreme Court's cases say repeatedly that the exclusionary rule is not really about deterring the issuer of the warrant. It's mostly about deterring, if not all about deterring the officer. And the deterrence value is, is huge. I mean, it's, at minimum, we want to give officers the incentive to read warrants and abide by their, and abide by their clear terms. The government's position... Yeah, that seems reasonable, that they would read a warrant before they executed it. I think that that's... Well, he or she did, right? She read the warrant and the affidavit and the attachment, all of which she thought were incorporated and, and so doesn't it, again, come down to whether it's objectively reasonable to believe that the affidavit was incorporated? Well, I, I, I think that the premise of that question is contrary to what the district court found. How's that? Because the, because the district... Isn't it also contrary to what the government has conceded? That the attachment wasn't incorporated? Yes. I mean, I think, I think that... Can we, can we agree that there's a fact, not incorporated? And then there's a legal question. Was it objectively reasonable to believe that it was, even though it wasn't incorporated? And those are different questions. It was not... Right. So there, there, there's a, there's, the, the, the government concedes that, that the attachment was not legally incorporated. Right. And I think what you're saying is... Right. ...is that the court found, the court found that, that as a fact it wasn't, and it's, as a legal matter, the magic words were not used to incorporate it. It refers to the affidavit, but it doesn't say we're incorporating for searching everything that's in the affidavit, right? That didn't cut it. But my question is, doesn't the question become for us whether it was objectively reasonable for an agent in Smith's position to believe that it was incorporated? No. For, for two reasons. One is that that, is that the district court did not, I don't think, like for the reasons I was saying before, I don't think it's fair to, to accept, even accept agent Smith's testimony on that point as true, that she believed that the affidavit was incorporated because the district court rejected a core piece of her testimony. And so... But wait, I guess I have two questions. One, what is the core piece that matters? And two, why does it matter? It's not a subjective inquiry. This is an objective question. Would a reasonable officer in her position have thought that they had authorization to search the phone for the things listed in the affidavit? Right. But I think what I thought that, I apologize for my misunderstanding, but I thought that the premise of the question was that she actually did believe that, that she had authorization based on the, based on the incorporate, what she thought was an incorporation. And that's the piece of it that, that I don't think can withstand the district court's factual findings because the district court, because agent Smith testified, I got this authorization from Commander Washburn and the district court said, I don't find by preponderance of the evidence that you have. Well, the district court said, I don't find by preponderance that he said that, again, that's the oral authorization, but the court, the paragraph above said, it's very likely they both thought they were talking about searching the phone, right? And that's fine. And we can accept that factual finding. We don't have to overturn that. We are asking a legal question of, was it objectively reasonable? Would a reasonable officer in her position have thought it was incorporated? Okay. So I'll return, I'll return to the legal question and, and on, as a matter of law, the answer is no, because the Supreme Court has, has never, has never held that if you exceed, exceed the scope of a valid warrant, regardless of what. That goes to the question of whether you're exceeding the scope. Do you see what, do you see why? The whole question is, is the scope of the warrant, does it include the affidavit or not? That's the question. And so this debate about, is it facially defective, is it not? It all comes down to, was it reasonable to think that the warrant included the affidavit? I mean, I, okay, I'll answer that. The answer is no, because the warrant, it's, because the CAS itself, the document that grants authority, is a standalone document. It said, it said on the document, page one of, of one. It's not, it's, there was nothing attached to it, as, as Judge Gregory pointed out. This is, there was no, Judge, Agent Smith should have known, and an objectively officer, objectively reasonable officer doesn't, should have known, that if a warrant says you can search a raised person and seize the phone, regardless of what you're asking to do, if, if you don't actually get that authorization in the warrant, it's, it's not objectively reasonable to search the phone. The government claims that Smith and the NCIS examiner stayed within the parameters of the affidavit and the attachment. Do you agree with that, or do you dispute that? I think that they, they stayed within the parameters of the affidavit. They exceeded this, the CAS twice. I think that that's, that's a critical point, and, and, and my point. I guess my question was just, I wanted to make sure I understood your position on, on whether they, so they did not exceed the affidavit and the attachment. I agree with that. They treated, and, and if those were incorporated, then they stayed within the warrant. You, you totally disagree with the premise that they were incorporated, though, right? We, or that it was objectively reasonable to think they were. It was objectively reasonable, yeah. So, so, so I, I, I, but I do think that that's an important point, and it goes to a, a point my, my friend made about what Agent Smith had done in the past. Because this wasn't an isolated incident, and that's important for deterrence too. Agent Smith testified that she had been the affidavit for 25 warrants or, you know, in, in her time in the NCIS, and every time she treated the CAS, the affidavit, and the addendum as the CAS. In other words, she was operating as though her request for authority was the equivalent to a grant of authority. So who knows how many other constitutional violations she had, she had committed. I'm not, I, I don't want to speculate. And what was the authority, was their authority introduced to, in this particular context about the regulations and what qualifies and what does qualify? I thought there was, there was something that, it didn't say that's wrong, but it also didn't say that's right. Can you remind me? I'm sorry, I'm not sure, are you talking about the military? The Naval, the Quickman, Navy Commander's Quick Reference Legal Handbook. You're referring to the military handbook? As far as I, I'm not, I'm not sure of the, of the question, I'm sorry. I thought there was some evidence about whether she was right or wrong about how she considered these documents, whether they all are part of the CAS or not. I don't, right, I think you're, I think what you said is right, that the, that the handbook did not say one way or the other whether these documents are all part of the CAS. But the government agrees on appeal that they're, that they're not all part of the CAS. So I mean, I think that, that it's, it's difficult to parse things between what she, if, if we're in the world where her, the district court rejects her testimony about what she believed, and we're also in the world where we're trying to figure out what an, what an objective officer who believed something would think, I think that you, that we can't get past the district court's findings of fact in that, in that respect. Now if the question is just would an objective officer generally conclude that these are all the same document, I think the answer is no. It's, it's, it's important that officers, that officers get, have an incentive to get warrants right, to have an incentive to, to write them out properly. She is the officer who is actually preparing the CAS, which is important under the Supreme Court's decision in GROW, and, and, and there's just nothing on the, in this CAS that would suggest that she had authority to, to search the phone. And again, I want to just emphasize again, the written warrant is what is actually presented to the arrestee. It's the document that gives the arrestee confidence that the, that the, that the, that the officer actually has lawful authority to conduct the search. Otherwise, the arrestee could, you know, could create misconduct, could do, could, could disagree and, and, and, and sort of resist the, the, the search. And that's why the warrant requirement is right there in the Fourth Amendment's text. So unless the court has any, has any other questions, I don't think I need to use more time. Thank you. Thank you. Ms. Pachauri, you have some time reserved. Just two points in rebuttal. The first, my friend suggested that the cases that we cited about execution don't actually involve an execution problem. Respectfully, I disagree with that contention. Grisanti and Pimentel both involved claims that the officers exceeded the scope of the warrant. And in both of those cases, the Seventh Circuit and the First Circuit applying Maryland versus Garrison looked at whether the officers had an objectively reasonable belief that the search they conducted was within the scope of the warrant. The second point I would make, Judge Rushing, you asked about what, what deterrence value does this have? Ultimately, the mistake here is not that the documentation was insufficient to support this cast. It's that it wasn't properly incorporated. And I just, there's not real incentive for officers to conduct a thorough investigation and prepare these detailed documents and then fail to properly incorporate them. I mean, they have every incentive to make sure that their warrants are sufficient to avoid risk of suppression. All that should have properly incorporated is one page. It's not detailed. They, all they needed to do was add one sentence. Right. And that's just a drafting error. Pretty critical one. It is. And that's why we've conceded it's insufficient. But it's not the kind of culpable misconduct that the Supreme Court has said is necessary to justify suppression. You're saying the Supreme Court said it has to be culpable? Yes. Culpable? Yes. Right. What Fourth Circuit case did you say? In the Supreme Court case? That comes from Herring and from Davis. So in other words, you have to find wrongdoing to get, did you say wrongdoing? Culpable is wrongdoing. It has to be some kind of more than mere negligence. It has to be culpable misconduct. Culpable is different now. That's, culpable is, it's worse than sort of extreme negligence, right? Culpable means... Right. That's a mens rea type almost bad acting. Yes, Your Honor. That's what the Supreme Court has said. Well, I mean, I think you could find extreme negligence in drafting a one-page document and not getting it correct. Respectfully, Your Honor, there is no suggestion in the record that Agent Smith was sort of aware of this problem and just kind of flagrantly disregarded it. I know. That's the problem with her negligence and incompetence. But at most, it's mere negligence and that's not sufficient to warrant suppression. But that's if we get beyond the, this exceeds the scope of the warrant, right? That's if Leon's applicable at all. We're talking about the exclusion and whether there would be any deterrence value. If Leon is applicable at all, that's where we are. Yes, that's correct, Judge Thacker. Unless the court has further questions, we ask that you ... Factual findings? Yes, Your Honor. Yeah. Okay. All right. Okay. We ask that you reverse. Thank you. Thank you so much. I think both counsel will come down and greet you both and then we'll proceed to our final case of the term.
judges: Roger L. Gregory, Stephanie D. Thacker, Allison J. Rushing